FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

DEC 3 1 2002

*signature*
CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                          Cr. No. 02-199 JP

TYSON EUGENE PATTERSON,

    Defendant.

## MEMORANDUM OPINION
## (INCLUDING FINDINGS OF FACT AND PARTIAL CONCLUSIONS OF LAW)

On May 20, 2002, a hearing was held on Defendant's Motion to Suppress (Doc. No. 14). At that hearing Stephen P. McCue represented Defendant, who was present, and Rhonda P. Backinoff represented Plaintiff. At the close of the hearing the Court requested supplemental briefing on (1) whether Defendant had a legitimate expectation of privacy in the motel room and (2) whether law enforcement officers could lawfully enter the motel room on the basis of the smell of marijuana alone. That briefing has been completed. Unfortunately the Court is not in a position to provide a definitive ruling on all issues raised by Defendant's motion at this juncture. However, the Court will make findings of fact and conclusions of law on the issues it has resolved, and request additional briefing, and possibly the presentation of additional evidence, on the issues yet to be decided.

**FINDINGS OF FACT**

On January 24, 2002, at approximately 3:00 p.m., the Defendant, Tyson Eugene Patterson, using the name Leon Stallard, rented Room 139 at the Crosslands Economy Studios in Albuqueruque, New Mexico. When he checked in, Defendant presented a New Mexico

72

identification card that had Defendant's photograph beside the name "Leon T. Stallard." Defendant paid cash for the room. Immediately after checking in, Defendant moved clothing, personal items, a VCR, and some crack cocaine from his car into Room 139. Defendant then left the motel.

Defendant returned to the motel and Room 139 at approximately 6:00 p.m. While Defendant was en route back the motel, Defendant's friend Steven Rogers called Defendant on Defendant's cell phone. Mr. Rogers, who was homeless at the time, asked Defendant if he could spend the night with Defendant. Mr. Rogers arrived at the motel and Room 139 soon after 6:00 p.m., about five minutes after Defendant had returned to Room 139. Shortly after Mr. Rogers entered Room 139, Defendant and Mr. Rogers began smoking a blunt, a cigar that was hollowed out and filled with marijuana.

Approximately twenty minutes after Mr. Rogers had entered Room 139 and Defendant and Mr. Rogers had started smoking the blunt, a team of police officers, including Steven P. Flores, came to Room 139. Steven P. Flores was an experienced narcotics detective with the Albuquerque Police Department (APD). Detective Flores had received information that a "black male" named Leon Stallard was selling narcotics out of Room 139 at the Crossland Economy Studios. Before going to Room 139, Detective Flores checked through NCIC and determined that Defendant Tyson Patterson used the alias "Leon Stallard" and that there was an outstanding misdemeanor warrant for the arrest of Defendant Tyson Patterson.

Detective Flores, accompanied by APD narcotics detective Robert F. Dilley and followed closely by APD narcotics officer Tomas Gutierrez, went to Room 139. Detective Flores knocked on the door. Either Defendant or Mr. Rogers opened the door. Immediately, Detective

Flores smelled the order of burned marijuana. In his long experience as a narcotics officer, Detective Flores had become familiar with the order of marijuana. Detective Flores saw Defendant holding the blunt.

Detective Flores asked if he could come into the room, but neither Defendant nor Mr. Rogers clearly responded that he could enter. On the other hand, neither Defendant nor Mr. Rogers said that Officer Flores could not enter. The officers then went into Room 139.

Officer Flores said that he was with APD and needed to speak to the registered guest because he had information that there were illegal drugs in the room. Defendant identified himself as Darius Johnson and handed Detective Flores an I.D. that had Defendant's photograph and the name Darius Johnson. Officer Flores asked if Leon Stallard was present and Defendant said Leon Stallard was his cousin. At some point Detective Tomas Gutierrez said "Hey, wait a minute. You're not Darius Johnson. You're Tyson Patterson." Detective Gutierrez had recognized Defendant from having known him when Detective Gutierrez used to be in street patrol. Before going to Room 139, Detective Gutierrez also gained knowledge that there was a misdemeanor arrest warrant outstanding for the arrest of Defendant. In response to Detective Gutierrez's comment that Defendant actually was Tyson Patterson, Defendant continued to deny that he was Patterson.

Before the police officers entered Room 139 and during the time they were searching it, the had not obtained a search warrant. The officers were aware of an outstanding misdemeanor arrest warrant for Defendant, but they did not possess a copy of that warrant at the time they entered into Room 139, searched it, and arrested Defendant.

3

During the search of Room 139, the officers found approximately 14 grams of cocaine that was not in plain view and a small amount of marijuana that was in plain view on a night stand.

## LEGAL ANALYSIS

**Conclusion #1:    Defendant Has Standing to Challenge the Search of Room 139.**

A Defendant can challenge a search under the Fourth Amendment of the United States Constitution only if he has a reasonable expectation of privacy in the place searched.[1] *Rakas v. Illinois*, 439 U.S. 128, 139 (1978). A cognizable privacy interest arises only when a defendant can demonstrate a subjective expectation of privacy in the place searched that society is willing to recognize as reasonable. *Smith v. Maryland*, 442 U.S. 735, 740 (1979). Here the Government has argued that Defendant cannot show an objectively reasonable privacy interest in Room 139 because Defendant rented it under a false name.

Only a few cases, and apparently none in the Tenth Circuit, have addressed how the use of a fake name in renting a motel room affects one's privacy expectations. In *U.S. v. Holzman*, 871 F.2d 1496, 1506 (9th Cir. 1989), *overruled on other grounds by Horton v. California*, 496 U.S. 128 (1990), the Ninth Circuit considered the Fourth Amendment rights of a defendant who rented a hotel room under a fictitious name. 871 F.2d at 1499. However it is not clear that the parties in *Holzman* litigated whether renting the hotel room with a fake name undermined the defendant's expectation of privacy in the hotel room. *Holzman's* analysis of the Fourth Amendment simply presumed, without any discussion, that the defendant there had an

---

[1] Although *Rakas* attempted to eliminate the doctrine of standing from Fourth Amendment inquiries, courts continue to discuss whether a person is entitled to challenge a search under the Fourth Amendment in terms of standing. *E.g. U. S. v. Edwards*, 242 F.3d 928, 936 (10th Cir. 2001).

4

expectation of privacy in the hotel room. Since *Holzman* did not directly confront the issue it has little precedential value.

In the absence of controlling authority the parties have argued by analogy. Defendant contends that the Court should follow the holding of a Ninth Circuit case which held that the use of a false name to purchase real property did not undermine the purchaser's legitimate expectation of privacy in that property. *U.S. v. Broadhurst*, 805 F.3d 849, 851-52 (9th Cir. 1986) (applying *Rakas* and holding that the purchaser had a legitimate expectation of privacy). Plaintiff argues that the Court should apply a district court's ruling that the use of a fake name when renting a car vitiated the renter's expectation of privacy in the car. *U.S. v. Gordon*, 65 F. Supp. 2d 365 (E.D. Va. 1999).

A convenient starting point for the inquiry is *Stoner v. California*, 376 U.S. 483 (1964). The Supreme Court in *Stoner* held that "[n]o less than a tenant of a house, or the occupant of a room in a boarding house, a guest in a hotel room is entitled to constitutional protection against unreasonable searches and seizures." 376 U.S. at 490 (internal citation omitted). Likewise, the Tenth Circuit has observed that one's privacy interest in a hotel or motel room is to be equated with a home. *U.S. v. Little*, 18 F.3d 1499, 1504 (10th Cir. 1994) (en banc) (noting that train roomettes "do not confer upon occupants the same degree of privacy as a dwelling or hotel or motel room"). Hence Plaintiff's suggestion that Defendant's expectation of privacy in his hotel room should be equated with a person's privacy rights in an automobile fails. *Rakas*, 439 U.S. at 148 (stating that "cars are not to be treated identically with houses or Apartments for Fourth Amendment purposes"); *Little*, 18 F.3d at 1504 (acknowledging that the "privacy interest of travelers on public thoroughfares is 'substantially less' than privacy interest in fixed dwellings," citing *United States v. Rem*, 984 F.2d 806, 812 & n. 3 (7th Cir.)).

5

Defendant's use of a false name to rent his motel room may reasonably show a heightened subjective expectation of privacy on his part. *Rakas*, 439 U.S. at 142 n.12 (noting that a "burglar plying his trade in a summer cabin during the off season may have a thoroughly justified subjective expectation of privacy"). But Plaintiff does not contest Defendant's subjective expectation of privacy. Plaintiff's argument is that society is not willing to accept as reasonable the renting of a motel room under a false name "for the purpose of avoiding detection *and* engaging in criminal activity." Doc. No. 18 at 4 (emphasis add).

Contrary to Plaintiff's assertion, an objective inquiry under the Fourth Amendment shuns consideration of a defendant's illicit motives since the objective inquiry presupposes lawful behavior. *U.S. v. Soto*, 988 F.2d 1548, 1554-55 (10th Cir. 1993) (holding that the discovery of an illegal purpose does not effect the objective component of the privacy analysis since "such *post hoc* rationalization subverts the purpose of the Fourth Amendment protection against unreasonable searches"); *cf. Florida v. Bostick*, 501 U.S. 429, 438 (1991) (holding that the reasonable person standard in a consensual police encounter "presupposes an *innocent* person") (emphasis in original). As Defendant correctly contends, the Fourth Amendment does not permit a wholesale exemption from the application of its protections based on a defendant's subjective intent to hide his illegal activity. *Minnesota v. Olsen*, 495 U.S. 91, 100 (1990) (holding that an overnight guest had a reasonable expectation of privacy in a dwelling even though he was attempting to evade the police there); *Minnesota v. Carter*, 525 U.S. 83, 110 (1998) (Ginsberg, J., dissenting) ("If the illegality of the activity made constitutional an otherwise unconstitutional search, such Fourth Amendment protection, reserved for the innocent only, would have little

force in regulating police behavior toward either the innocent or the guilty.");[2] *cf. Marchetti v. U.S.*, 390 U.S. 39, 51 (1968) (noting that constitutional privileges were "intended to shield the guilty and imprudent as well as the innocent and foresighted; if such an inference of antecedent choice were alone enough to abrogate [a] privilege's protection, it would be excluded from the situations in which it has historically been guaranteed, and withheld from those who most require it").

Once the illegal conduct is eliminated from the analysis Plaintiff concedes that society permits the use of false names to rent motel rooms. Tr. at 153 (acknowledging that "society is willing to accept that if Mick Jagger rents a motel room, he might not do that under his real name"). New Mexico's criminal code exemplifies society's acceptance of this practice as obtaining accommodations under a false name is illegal only if a person obtains lodging "without paying" the proprietor. NMSA 1978, § 30-16-16 (1987). Here Defendant paid in advance for a one week stay at the Crosslands Economy Studios.[3] Since Defendant has shown a subjective expectation of privacy that society is willing to recognize as reasonable, Defendant's privacy

---

[2] *Minnesota v. Carter* held that a person invited into a dwelling for a short business transaction had no expectation of privacy in that dwelling. *Carter* did not turn on the illegality of a defendant's conduct, which in that case was repackaging cocaine, as Plaintiff suggests. *Carter*'s holding simply made a constitutional distinction between short commercial transactions and a guest who spends the night. 525 U.S. at 90. That holding applies equally to people who stop at a home to deliver pizza or fix the refrigerator and the offhand person who visits briefly to repackage illicit drugs. Throughout the entire constitutional analysis in *Carter*, *see* 525 U.S. at 473-74, the Court never mentioned the illicit nature of the activity at issue, choosing instead to address the constitutionally significant conduct at a higher level of generality by using phrases like a "short-term business visit by a stranger," or "a business transaction." 525 U.S. at 90 & n.*.

[3] Unlike the evidence addressing rented automobiles in *Gordon*, Plaintiff did not present testimony that the Crosslands Economy Suites had a policy "not to rent to individual's with false identification." 65 F. Supp. at 369.

7

interest in Room 139 was protected by the Fourth Amendment. *Rakas*, 439 U.S. at 143 (observing that legitimate expectations of privacy can arise from "understandings that are recognized and permitted by society").

    **Conclusion #2:**  **No Consent to Enter Room 139.**

    Plaintiff argues that Defendant waived his Fourth Amendment protections when he invited the police officers into Room 139 and consented to the search of its contents for drugs. *U.S. v. Zubia-Melendez*, 263 F.3d 1155, 1162 (10th Cir. 2001) (noting that the Fourth Amendment is not offended if the defendant consented to the warrantless search and seizure). Although the testimony was conflicting as to whether Detective Flores asked for consent to enter Room 139 and to search it, the testimony does not support a finding that either Defendant or Mr. Rogers voluntarily, clearly and unequivocally gave consent to enter the room or to search it. Of some concern is that the officers carefully planned to approach the occupants of Room 139 without attempting to bring consent forms or recording devices to memorialize Defendant's consent in any fashion. When juxtaposed against Defendant's denials that consent was given for the police officers to enter or search Room 139, the Court concludes that Plaintiff failed to prove "that consent was unequivocal and specific and freely given." *Id.*

    **Conclusion #3:**  **Smell of Odor of Marijuana Insufficient to Justify Warrantless Entry into Room 139.**

    In the absence of consent, Plaintiff argues that the police officers could enter Room 139 because they smelled marijuana once the door was opened. However Plaintiff has not cited to any authority that would support a warrantless entry into a motel room based solely on the smell of marijuana. Once again, Plaintiff has offered for authority cases that have approved of the warrantless search of automobiles based on the smell of marijuana. Yet the language of these

cases plainly limits the scope of warrantless searches under such conditions to vehicles or a traveler's luggage. *U.S. v. Morin*, 949 F.2d 297, 300 (10th Cir. 1991) (stating that the Tenth Circuit "has long recognized that marijuana has a distinct smell and that the odor of marijuana alone can satisfy the probable cause requirement to search a vehicle or baggage"). Binding authority has granted a dwelling place, like Defendant's motel room, a much higher level of protection than movable objects like cars or baggage. *E.g. Payton v. New York*, 445 U.S. 573, 587, 590 (1980) (observing that freedom from intrusion into one's "dwelling is the archetype of the privacy protection secured by the Fourth Amendment," which draws "a firm line at [its] entrance"); *Little*, 18 F.3d 1504. When one's dwelling is concerned the

> [i]ncontrovertible testimony of the senses that an incriminating object is on the premises belonging to a criminal suspect may establish the fullest possible measure of probable cause. But even where the object is contraband, [the Supreme Court] has repeatedly stated and enforced the basic rule that the police may not enter and make a warrantless seizure.

*Horton v. California*, 496 U.S. 128, 137 n.7 (1990); *Henry v. U.S.*, 361 U.S. 98, 101 (1959) (noting that *Johnson v. U.S.*, 333 U.S. 10 (1948), held that "the smell of opium coming from a closed room was not enough to support an arrest and search without a warrant"). The Court concludes that the smell of marijuana standing alone does not support a warrantless entry into Room 139.

### Exigent Circumstances

As *Payton* makes clear, exigent circumstances may permit the warrantless search of Defendant's motel room. 445 U.S. at 590. But Plaintiff has not argued clearly that exigent circumstances were present in this case even though Defendant repeatedly contended that the doctrine did not apply here. Doc. No. 14 at 3; Doc. No. 48 at 3-5. Under the circumstances it appears that Plaintiff has failed to meet its "burden of proving that an exception to the warrant

requirement applies." *Zubia-Melendez*, 263 F.3d at 1162.  Given the prevailing standards governing arrests inside one's dwelling the police officers may have been able to secured the premises to ensure that evidence was not destroyed, *Illinois v. McArthur*, 531 U.S. 326, 336 (2001), but they could not have entered Room 139 to search it for the marijuana that they smelled.[4]  As stated in *Payton*:

> Crime, even in the privacy of one's own quarters, is, of course, of grave concern to society, and the law allows such crime to be reached on proper showing.  The right of officers to thrust themselves into a home is also a grave concern, not only to the individual but to a society which chooses to dwell in reasonable security and freedom from surveillance.  When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or Government enforcement agent.

445 U.S. at 586 n.24 (quoting Jackson, J., in *Johnson v. U.S.*, 333 U.S. 10, 13-14 (1948)).  The Court concludes that it is not in a position to make a final ruling whether exigent circumstances permitted the warrantless entry into Room 139.

**Entry Based on Defendant's Outstanding Arrest Warrant.**

Plaintiff has not argued, at least not directly, that *Payton's* holding—that "an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives," 445 U.S. at 603—permitted Officers Flores, Dilly, and Gutierrez to enter Room 139.  What Plaintiff has argued is that the police officers in this case received an anonymous tip that Leon Stallard was selling drugs from Room 139.  When the officers ran the name Leon Stallard through the NCIC database, they determined that Leon

---

[4] The Court takes note that the opinion in *Illinios v. McArthur* cited *Mincy v. Arizona*, 437 U.S. 385, 394 (1978), for the proposition that "exigent circumstances do not justify [a] search where [a] police guard at [the] door could prevent a loss of evidence."

10

Stallard was an alias used by Tyson Patterson, who had an outstanding misdemeanor arrest warrant.

What is missing from Plaintiff's argument, and the testimony of the police officers at the hearing, is that the police officers entered Room 139 to arrest Tyson Patterson based on the reasonable belief that Tyson Patterson rented Room 139 and the reasonable belief that he was inside Room 139 when they entered it. *U.S. v. Gay*, 240 F.3d 1222, 1226-27 (10th Cir. 2001). *Gay* permitted an entry into a defendant's home based on an outstanding arrest warrant. In *Gay*, however, an informant took police to the defendant's home and told the police that the defendant was inside it at that moment. 240 F.3d at 1227-28. Here, the tip that Leon Stallard was in Room 139 selling drugs came from an anonymous source and provided no predictive information through which the officers could test the informant's reliability. *Florida v. J.L.*, 529 U.S. 266, 271 (2000) (holding that an anonymous tip is reliable only if it provides predictive information in the form of "[k]nowledge about a person's future movements").[5]

---

[5] The Court is aware that the reasonable belief standard in *Gay* is not the equivalent of the reasonable suspicion standard which was at issue in *J.L.* 240 F.3d at 1227. However no circuit court has stated just how the standards differ or which standard places a higher burden on the Government. *U.S. v. Clayton*, 210 F.3d 841, 844 n.3 (8th Cir. 2000) (noting the difference but finding that the anonymous tip there was corroborated and thus "considerably more reliable than the uncorroborated anonymous tip recently found inadequate to justify a *Terry*-stop in *Florida v. J.L*"). What is certain is that *J.L.* spoke to the *reliability* of anonymous information. *J.L.* held that unless an anonymous tip provided predictive information by which the police could independently "test the informant's knowledge and credibility," the information was simply not reliable enough to justify a stop and frisk. Here the tip provided no predictive information and the police officers did not attempt to corroborate that Tyson Patterson was indeed this particular Leon Stallard or that Mr. Patterson was inside Room 139 before entering it. If the information provided by the tipster here was not reliable enough to justify a stop and frisk of the Defendant in public, standing alone it could hardly be said to justify an intrusion into Defendant's quarters where his privacy rights and Fourth Amendment protections are at their zenith.

11

Other than stating that Leon Stallard was a "black male," no detailed physical description of the suspect was provided by the anonymous source. The police officers did not try to verify their belief that the tipster's Leon Stallard and Tyson Patterson were one and the same by either staking out Room 139 or inquiring at the front desk to see if Leon Stallard's physical description matched that of Tyson Patterson in police records. It appears that neither Detective Flores nor Detective Dilley, the two officers who knocked on the door of Room 139, recognized Defendant as Tyson Patterson before they entered it.

Without evidence or argument that *Payton's* requirements for serving an arrest warrant inside Room 139 were met, the Court is not in a position to make a final ruling on whether the officers could lawfully enter Room 139 for that reason. Additional briefing, and perhaps additional testimony, may be necessary to resolve this issue.

*[signature]*
CHIEF UNITED STATES DISTRICT JUDGE