# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES of AMERICA,

        Plaintiff,

vs.  Cr. No. 02-199  JP

TYSON EUGENE PATTERSON,

        Defendant.

## MEMORANDUM OPINION AND ORDER

On December 31, 2002 the Court filed a Memorandum Opinion which concluded that Albuquerque Police Officers entered and searched Defendant's motel room without a search warrant and without Defendant's consent. Doc. No. 72. However, the Memorandum Opinion noted that the Court was not in a position to make a final ruling on whether police officers lawfully could have entered Room 139 based on either exigent circumstances or the fact that the officers were aware of an outstanding warrant for Defendant's arrest. The Court invited counsel to brief these legal theories and to present additional testimony.

At the February 6, 2003 call of the calendar counsel discussed those two legal theories with the Court. During that hearing counsel for Plaintiff took the position that only exigent circumstances would support the warrantless entry into Room 139. Despite the Court's invitation to do so, Plaintiff chose not to present more evidence on the issue.

**BACKGROUND**

The Court already has held that the smell of marijuana alone does not support the police officers' warrantless entry into Room 139. Doc. No. 72 at 8-9; *Horton v. California*, 496 U.S.

128, 137 n.7 (1990); *U.S. v. Pringle*, Cr. No. 00-1242 LH, Doc. No. 39 at 4-5 (holding that the smell of marijuana alone was insufficient to create exigent circumstances), *aff'd*, 53 Fed. Appx. 65 (10th Cir. 2002). Yet Plaintiff contends that there is more here than the mere smell of marijuana. Plaintiff claims the police officers saw Defendant holding a type of illicit cigar commonly known as a blunt, and that the police officers had probable cause to believe the blunt contained the marijuana that they smelled burning. According to Plaintiff, these facts allowed the police officers to enter Room 139 and arrest Defendant, who was in the interior of the room, for possession of marijuana.[1]

**LEGAL STANDARD FOR EXIGENT CIRCUMSTANCES**

A warrantless arrest in the privacy of one's dwelling is "prohibited by the Fourth Amendment, absent probable cause and exigent circumstances." *Welsh v. Wisconsin*, 466 U.S. 740, 749 (1984). Without exigent circumstances, the "Fourth Amendment has drawn a firm line at the entrance" to a dwelling and prohibits a law enforcement officer from crossing that threshold without a warrant. *Payton v. New York*, 445 U.S. 573, 590 (1980). Since "searches and seizures inside a home without a warrant are presumptively unreasonable," *Payton*, 445 U.S. at 586, the government bears "a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests." *Welsh*, 466 U.S. at 749-50.

Although there "is no absolute test for determining whether exigent circumstances are present because such a determination ultimately depends on the unique facts of each

---

[1] In addition to the facts set out in the December 31, 2002 Memorandum Opinion, the Court finds that Defendant was located in the interior of Room 139 when the officers saw him holding the blunt.

controversy," the Tenth Circuit has "recognized certain general factors." *U.S. v. Anderson*, 154 F.3d 1225, 1233 (10th Cir. 1998).

> An exception to the warrant requirement that allows police fearing the destruction of evidence to enter the home of an unknown suspect should be (1) pursuant to clear evidence of probable cause, (2) available only for serious crimes and in circumstances where the destruction of evidence is likely, (3) limited in scope to the minimum intrusion necessary to prevent the destruction of evidence, and (4) supported by clearly defined indications of exigency that are not subject to police manipulation or abuse.

*Id.*

**ANALYSIS**

As the language of *Anderson* shows, an evidentiary threshold for exigent circumstances is a belief on the part of a law enforcement officer that a warrantless entry was necessary to prevent the destruction of evidence. Even the lone authority Plaintiff cites in support of exigent circumstances, *U.S. v. Carter*, No. 01-5338, WL 118265 (6th Cir. Jan. 15, 2003),[2] acknowledges that a police officer must have a "reasonable fear that [contraband] would be destroyed if he vacated the premises."[3] However, not a single police officer here claimed to have entered Room 139 to abate the destruction of evidence. Without evidence that the police officers entered Room

---

[2] The Sixth Circuit originally issued *Carter* as a published opinion. However, on February 24, 2003, the Sixth Circuit vacated the decision and judgment in *Carter* and withdrew the opinion from publication in the bound volume of the Federal Reporter because a rehearing *en banc* had been granted. Although the case has lost its precedential value this Court will use the case for comparison purposes as it is the only case Plaintiff has cited as supporting exigent circumstances.

[3] Although Defendant has argued that the Tenth Circuit's standard for determining exigency has not been met, Doc. No. 47 at 3-4, 6, Plaintiff has not briefed or argued the specific factors for exigent circumstances as defined in the opinions of the Tenth Circuit Court of Appeals.

139 based on a concern that Defendant's marijuana would be destroyed,[4] Plaintiff's case is fatally flawed.

Aside from this evidentiary shortcoming, Plaintiff has satisfied the probable cause factor of *Anderson*. The Court already has found that Detective Flores smelled marijuana and observed a blunt in Defendant's hand before entering Room 139. Doc. No. 72 at 3. Detective Flores testified that, based on his experience as a narcotics officer, he knew from the visible characteristics of the cigar in Defendant's hand and the odor that Defendant was smoking marijuana. Tr. at 13.[5] Hence Detective Flores had probable cause to believe that Defendant possessed marijuana.[6]

---

[4] Obviously, some of the blunt would be consumed by smoking it, but common sense dictates that the blunt could not have been completely consumed. At least a butt of the blunt would have been left. There is no evidence here that the police officers feared that the blunt "was but a toilet flush away from destruction," as was the case in *Carter*. WL 118265 at * 4 (internal quotations omitted).

[5] The transcript citations used in this Memorandum Opinion and Order all refer to the suppression hearing held on May 20, 2002.

[6] Detective Flores' plain view of Defendant holding a blunt in the interior of Room 139 does not mean that Detective Flores immediately could have seized the blunt. Under the plain-view doctrine "not only must the officer be lawfully located in a place from which the object can be plainly seen, but he or she must also have a lawful right of access to the object itself." *Horton*, 496 U.S. at 137. The requirement of a lawful right of access precludes a police officer from seizing an object that is seen "through the window of a house," or "via aerial photography or long-range surveillance. In those cases the officer[] cannot use the plain view doctrine to justify a warrantless seizure, because to do so would require a warrantless entry upon private premises." *U.S. v. Naugle*, 997 F.2d 819, 823 (10th Cir. 1993). The same can be said about viewing a marijuana cigar through the doorway of Room 139. Unless exigent circumstances are present, plain view alone will not support the warrantless entry into Room 139. *U.S. v. Durham*, No. 98-10051-02, 1998 WL 684241, at *6 (D. Kan. Sept. 11, 1998) (holding that "an officer's 'plain view' of contraband inside a residence will not justify a warrantless entry absent some additional exigent circumstances") (unpublished opinion).

However, Plaintiff has not carried its burden with regard to the second *Anderson* factor. The requirement that exigent circumstances should be available only for serious crimes arises from "the presumption of unreasonableness that attaches to all warrantless home entries." *Welsh*, 466 U.S. at 750 (addressing whether police could make a warrantless arrest inside a home in order to measure a defendant's blood-alcohol level after the defendant had fled the scene of a car accident). *Welsh* opined that "[w]hen the government's interest is only to arrest for a minor offense, that presumption is difficult to rebut, and the government usually should be allowed to make such arrests only with a warrant issued upon probable cause by a neutral and detached magistrate." *Id*. Stated otherwise, "application of the exigent-circumstances exception in the context of a home entry should rarely be sanctioned when there is probable cause to believe that only a minor offense . . . has been committed." 466 U.S. at 753.

To decide whether a particular exigency justified a warrantless home entry, *Welsh* chose to balance the state's interest in prosecuting the offense at issue, as measured by its statutory punishment, against the individual's right to be protected from unreasonable searches and seizures under the Fourth Amendment. In so doing the Court observed that most courts "have refused to permit warrantless home arrests for nonfelonious crimes." 466 U.S. at 752. Since Illinois punished the offense of driving while intoxicated as a nonjailable civil offense, the Court held that making "a warrantless home arrest cannot be upheld simply because evidence of [Defendant's] blood-alcohol level might have dissipated while the police obtained a warrant." 466 U.S. at 754.

In *Illinois v. McArthur*, 531 U.S. 326 (2001), the United States Supreme Court revisited the reasonableness of police conduct when investigating a minor crime committed in the privacy of one's dwelling. *McArthur* addressed the constitutionality of a police officer's refusal to allow a

5

individual to re-enter his home when the police officer feared that the marijuana he had inside the home would be destroyed.  The police officer kept the individual outside his home and would not allow him to reenter it alone until after a search warrant was obtained.  Following *Welsh*, the Court balanced the state's interest prosecuting marijuana possession against the restriction the police officer had placed on the individual.

*McArthur* observed that with a possible punishment of 30 days in jail, Illinois considered marijuana possession a more serious infraction than the nonjailable offense in *Welsh*.  531 U.S. at 336.  *McArthur* also noted that the police restraint imposed—keeping an individual from re-entering his home—was "considerably less intrusive than police entry into the home itself to make a warrantless arrest or conduct a search."  *Id*.  In balancing the interests at stake the Court concluded that the police conduct "was both limited and tailored reasonably to secure law enforcement needs while protecting [the individual's] privacy interests."  531 U.S. at 337.  *McArthur* held that under the circumstances the police officer's refusal to allow a person inside his home was a reasonable restriction on that person's Fourth Amendment rights.

The most important feature of *McArthur* is that the Court expressly chose not to decide "whether the circumstances before us would have justified a greater restriction for this type of offense."  531 U.S. at 336.  Thus, *McArthur* purposefully did not decide the question presented here:  whether a police officer can make a warrantless entry into a dwelling to seize evidence of simple marijuana possession.  Given the lack of binding precedent on the issue, it was imperative for Plaintiff to balance the interests as required under *Welsh*, *McArthur*, and *Anderson*.

Some courts like the Sixth Circuit in *Carter* and the Fourth Circuit in *U.S. v. Grissett*, 925 F.2d 776 (4th Cir. 1991), have concluded that evidence of marijuana possession justified

6

warrantless searches of motel rooms. Yet, neither of these cases attempted to balance the defendant's Fourth Amendment rights against the government's interest in prosecuting marijuana possession as required by *Welsh* and *McArthur*. In the Tenth Circuit "the destruction of evidence alone justifies a warrantless entry into the home only when the state interest in preventing the crime (as determined by the penalty imposed for violations) is sufficiently great."[7] *U.S. v. Aquino*, 836 F.2d 1268, 1271 (10th Cir. 1988) (citing *Welsh*). Accordingly, Plaintiff's bald citation to *Carter* is insufficient to carry its burden on the second *Anderson* factor.

Instead of balancing the competing interests at stake Plaintiff simply has argued that after witnessing Defendant inside Room 139 with a blunt the police officers were entitled to enter the motel room and arrest Defendant for marijuana possession. Whatever hypothetical value Plaintiff's argument has, it is at odds with the evidence presented in this case. Detective Flores testified on both direct and cross examination that "if that's all he had, if that was his personal use marijuana, [Defendant] wouldn't be arrested." Tr. at 15, 38. This fact also distinguishes this case from *Carter,* since the police officer there testified that "upon smelling the odor of marijuana and [seeing] what appeared to be a blunt, [the police officer] had decided to arrest the defendant for

---

[7] Although Plaintiff never discussed New Mexico's penalty for marijuana possession, it is less than the state interest asserted in *McArthur*. In New Mexico marijuana possession is punished by a fine between $50 and $100 and "imprisonment for not more than fifteen days." NMSA 1978, § 30-31-23 (B) (1990). Although the tip the police officers received about narcotics activity may have provided some degree of suspicion, *cf. J.L. v. Florida*, 529 U.S. 266,273 n * (2000) (observing that the "mere fact that a tip, if true, would describe illegal activity" does not amount to reasonable suspicion unless the tip is reliable), there is no evidence that the officers had probable cause to believe that Mr. Patterson had committed a more serious crime than marijuana possession. "It must be assumed, therefore, that at the time of arrest the police were acting as if they were investigating and eventually arresting for [the most petty offense]." *Welsh*, 466 U.S. at 747.

marijuana possession." WL 118265 at * 6.  Hence the facts of this case do not support Plaintiff's argument that police officers entered Room 139 to arrest Defendant for holding the blunt.

The third *Anderson* factor requires that the police conduct during an exigency must be "limited in scope to the minimum intrusion necessary to prevent the destruction of evidence."  154 F.3d at 1233.  In other words, a search based on exigent circumstances "must not be motivated by an intent to arrest and seize evidence."  *U.S. v. Rhiger*, 315 F.3d 1283, 1288 (10th Cir. 2003). The Tenth Circuit routinely has upheld warrantless searches when a police officer enters the premises to stop the destruction of evidence and no more.  *E.g. Rhiger*, 315 F.3d at 1290 (noting that after the police officers "turned off the heat" to the meth lab, they obtained a search warrant before re-entering the premises and conducting "a full and thorough search"); *U.S. v. Scroger*, 98 F.3d 1256, 1260 (10th Cir. 1996) (Finding that "the warrantless entry and protective sweep were limited in scope to ensure the safety of the officers and the residence. A full search of the residence was not conducted until after the search warrant was obtained."); *U.S. v. Parra*, 2 F.3d 1058, 1063 (10th Cir. 1993) (observing that after the police secured the scene "one of the detectives obtained a warrant to search the rest of the room and the Buick"); *U.S. v. Carr*, 939 F.2d 1442, 1447 (10th Cir. 1991) (finding that after the police stopped defendants from flushing PCP down the toilet "[n]o search of the room was conducted until a search warrant was obtained about two hours later").

The police officers here were motivated by a desire to search the entire premises and a desire to have Defendant try to arrange drug sales for them.  The police certainly did not enter Room 139 just to seize the blunt in Defendant's hand before securing a search warrant.  Hence

Plaintiff has not satisfied the third factor of *Anderson*.[8]  *Cf. Carter*, WL 118265 at * 4 (observing the search of the entire premises indicates that an exigent circumstance was manufactured).

Finally, Plaintiff must show "clearly defined indications of exigency that are not subject to police manipulation or abuse." *Anderson*, 154 F.3d at 1233.  The police officers testified that they entered Room 139 on the basis of Defendant's consent alone.  There was no testimony that the destruction of evidence necessitated the police officers' entry into Room 139.  In justifying a warrantless entry "there must be a showing by those who seek exemption [to the Fourth Amendment] that the exigencies of the situation made that course imperative." *Coolidge v. New Hampshire*, 403 U.S. 443, 455 (U.S. 1971) (internal punctuation and quotations omitted).  On this record the Court is unable to conclude that the warrantless entry into Room 139 was imperative.  *E.g. U.S. v. Carr*, 939 F.2d 1442, 1447 (10th Cir. 1991) (basing exigency on the fact that when a motel room occupant opened the door and saw the police, he "slammed the door shut, locked it, and shouted to another individual inside the motel room that the police were outside the door").

Defendant's Motion to Suppress should be granted if any one of the *Anderson* factors remains unsatisfied.  The absence of three out of four *Anderson* factors makes that outcome inescapable.

---

[8] The Tenth Circuit's "exigent circumstance cases have emphasized that the police began the process of obtaining a warrant as soon as they had probable cause." *Aquino*, 836 F.2d at 1273-74.  Even though there may have been up to six police officers on the scene, the police officers here never tried to obtain a search warrant.  Tr. at 78.

IT IS THEREFORE ORDERED that Defendant's Motion to Suppress Warrantless Search (Doc. No. 14) is

 GRANTED.

_____
CHIEF UNITED STATES DISTRICT JUDGE